UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| GLENN VERSER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 14-3060 |
| | ) |
| DOUGLAS GOODING, *et al.* | ) |
| | ) |
| Defendants. | ) |

## **SUMMARY JUDGMENT OPINION**

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se and presently incarcerated at Stateville Correctional Center, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging claims for excessive force and retaliation that arose from his incarceration at Western Illinois Correctional Center and Lawrence Correctional Center. The matter comes before this Court for ruling on the Defendants' Partial Motion for Summary Judgment. (Doc. 88). The motion is granted in part and denied in part.

## **LEGAL STANDARD**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor.  <u>Ogden v. Atterholt</u>, 606 F.3d 355, 358 (7th Cir. 2010).  The party moving for summary judgment must show the lack of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

## FACTS

During the relevant time period, Plaintiff was incarcerated at Western Illinois Correctional Center ("Western") and Lawrence Correctional Center ("Lawrence").  Defendant Funk was the transfer coordinator for the Illinois Department of Corrections ("IDOC"), and Defendant Gooding was a correctional officer at Western.  The remaining defendants were employed at Lawrence in the following

capacities: Defendant Hodge was the Warden; Defendants Storm and Tredway were Assistant Wardens; Defendant Strubhart was the grievance officer; and Defendant Erickson was a correctional officer. Plaintiff alleges a First Amendment retaliation claim against each of these defendants.[1]

On December 7, 2012, Plaintiff arrived at Western Illinois Correctional Center ("Western") from another prison. On December 13, 2012, Plaintiff was transferred to Lawrence Correctional Center ("Lawrence"). Plaintiff testified in his deposition that this transfer was a "lateral" transfer, as opposed to a transfer to a more restrictive prison for disciplinary reasons. Pl.'s Dep. 27:2-7 ("Q. You indicated that both Western Illinois and Lawrence are Level 2 facilities. Is that the same as being a medium security facility? A. Yes. Q. So this was a lateral transfer? A. Exactly."). According to documents Defendants provided, Western and Lawrence are both "minimum or medium security" prisons that house inmates in any grade classification with less than 20 years remaining until the inmate's release date. (Doc. 89-3 at 4).

---

[1] Plaintiff also has a pending Eighth Amendment claim alleging excessive force against Defendant Erickson. Defendant Erickson has not moved for summary judgment on this claim.

Records show that Plaintiff's 2012 transfer from Western was related to comments Plaintiff made about one of Western's female employees in 2007. Specifically, Plaintiff filed a grievance that read in relevant part: "For instance, [the employee] is an individual with a history of frequenting bars, getting drunk, meeting strangers, and later discovering that she is pregnant by the unknown." (Doc. 89-3 at 8). Plaintiff's discipline for these comments included a transfer to Stateville Correctional Center ("Stateville"), a maximum security prison. Pl.'s Dep. 9:19-24; see Illinois Department of Corrections, All Facilities, available at: https://www.illinois.gov/idoc/facilities/Pages/AllFacilities.aspx (last accessed Feb. 6, 2017). The records indicate that this employee still worked at Western in 2012 when Plaintiff returned. Accordingly, Plaintiff was transferred to Lawrence.

Once at Lawrence, Plaintiff encountered issues with receiving his property. Plaintiff testified that a non-defendant prison guard confiscated several items, including a television that was later cracked and cassette tapes to which Plaintiff attached sentimental value. Pl.'s Dep. 22:7-23:24. Plaintiff testified that he cannot

produce evidence that the guard was ordered by the Defendants to take these items. Id.

Plaintiff's complaints to prison administrators about these items, and other perceived acts of retaliation, were so frequent that Plaintiff likened his actions to those of a stalker or a broken record. In response to those complaints, Defendant Hodge met with Plaintiff, but did not resolve the issues to Plaintiff's satisfaction. Instead, the results of this meeting form the crux of Plaintiff's claims: "I voiced all my concerns, the retaliation. He promised to look into them. My TV could have been saved. My tapes could have been saved, and he did absolutely nothing. It wasn't his action. It was his inaction." Pl.'s Dep. 33:20-24.

Defendant Tredway also listened to Plaintiff's concerns. Id. 52:18-20 ("[I]f I would approach her on the walk, she would hear what I had to say."). When Plaintiff met with her, however, she did not entertain Plaintiff's complaints of retaliation, presumably the same complaints Plaintiff made to Defendant Hodge and Defendant Storm. Id. 51:10-16. Nonetheless, Plaintiff testified that he has no evidence that Defendant Tredway knew about Plaintiff's prior

litigation.  Id. 53:14-22.  Plaintiff, however, testified that he discussed his prior litigation with Defendant Storm.  Id. 49:9-11.

According to Plaintiff, the inaction of prison officials was not limited to high level administrators.  Defendant Strubhart, the grievance counselor, failed to resolve Plaintiff's grievances in a manner satisfactory to Plaintiff.  Plaintiff asserts that the responses were not "in conjunction with the administrative directives."  Id. 55:12-14.

As an example, Plaintiff testified that Defendant Strubhart failed to investigate a grievance regarding the events that gave rise to Plaintiff's excessive force claims against Defendant Erickson.  A copy of the grievance discloses that Defendant Strubhart, or Plaintiff's counselor, obtained a statement from Defendant Erickson, but later recommended denial of the grievance on the grounds that Plaintiff's claims could not be substantiated.  (Doc. 89-4 at 21).  Grievances in the record show that Defendant Strubhart inquired with the relevant individual or department within the prison each time Plaintiff filed a grievance—not all grievances were denied.  See (Doc. 89-4 at 2, 5, 9, 12, 16, 21, 25,

31, 34, 37); id. at 28 (upholding Plaintiff's grievance upon investigation).

## ANALYSIS

To prevail on a retaliation claim, the Plaintiff must show that he engaged in activity protected by the First Amendment; he suffered a deprivation that would likely deter First Amendment activity in the future; and the First Amendment activity motivated the decision to take retaliatory action.  Bridges v. Gilbert, 557 F.3d 541, 553 (7th Cir. 2009).  If Plaintiff can make a prima facie showing that his protected activity was a "motivating factor" that caused the alleged harm, then the burden shifts to the defendants to show that the harm would have occurred anyway, despite the protected activity.  Greene v. Doruff, 660 F.3d 975, 979 (7th Cir. 2011).

Prior to arriving at Western and Lawrence, Plaintiff had filed several lawsuits.  These lawsuits, Plaintiff contends, are the sole First Amendment activity at issue here.  The parties do not dispute that filing a lawsuit is a protected First Amendment activity.

Plaintiff does not dispute the actions underlying the discipline he received in 2007, though he points out that one of the two infractions then charged was later expunged.  Even so, Defendants'

proffered reason for Plaintiff's 2012 transfer is supported by the facts surrounding Plaintiff's 2007 transfer—both transfers suggest that prison officials desired to separate Plaintiff and the female employee. Unlike 2007, however, where Plaintiff was transferred from a medium security prison (Western) to a maximum security prison (Stateville) for disciplinary reasons, the 2012 transfer involved two medium security facilities. Plaintiff does not dispute that the employee targeted by his 2007 comments still worked at Western in 2012, nor does he suggest the absence of valid penological interests in keeping him and the employee separated.

As to the confiscation of Plaintiff's personal property at Lawrence, Plaintiff testified that a non-defendant prison guard took the property. He also testified that he cannot produce evidence that Defendants Hodge, Tredway, and Storm (the Warden Defendants) ordered the prison guard to do so. The Warden Defendants cannot be held constitutionally liable under a theory of *respondeat superior*, and, without evidence of personal involvement, Plaintiff cannot prevail on his claims with regards to the initial confiscation. See Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated

upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.").

Nonetheless, Plaintiff testified that his retaliation claims are based upon the Warden Defendants failure to remedy the alleged ongoing acts of retaliation, which Plaintiff identified as the confiscation of his personal property (television and cassette tapes) and the lack of a dayroom at Lawrence. These deprivations, however, must be viewed in the context of other privileges Plaintiff was afforded. For example, Plaintiff was allowed to purchase a new television while his old television remained the subject of a pending grievance. The net result is that Plaintiff was deprived only of his cassette tapes and of a dayroom in his housing unit.

The Court cannot determine how long Plaintiff's grievance regarding his property remained pending as the grievance does not appear in the record. Plaintiff does not argue that the Warden Defendants delayed resolution of Plaintiff's grievances in any way, nor has he provided any evidence as to why he was entitled to have his complaints resolved outside the grievance process. At best, Plaintiff has only shown that the Warden Defendants failed to expedite resolution of a pending grievance—a scenario no different

than if Plaintiff had filed an emergency grievance the warden later deemed a non-emergency.  See 20 Ill. Admin. Code. § 504.840.  In either scenario, Plaintiff's remedy would lie in the normal grievance process, which Plaintiff had already started.

Next, Plaintiff argues that Defendant Strubhart's retaliatory acts manifested themselves in the failure to follow administrative rules when investigating a grievance.  The grievances Defendants produced show that Defendant Strubhart, or another prison official, investigated each of Plaintiff's grievances to the extent that was necessary to resolve the grievances.  The record indicates that one of Plaintiff's grievances was delayed, but Defendant Strubhart took action in an attempt to remedy the problem. [2]

The Court finds that the loss of cassette tapes and the lack of a dayroom, absent any evidence that Plaintiff's confinement was otherwise more restrictive, is not a deprivation that would deter a person of ordinary firmness from exercising First Amendment rights.  See Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982) ("It would trivialize the First Amendment to hold that harassment for

---

[2] Per Defendant Strubhart's response written on the grievance: "Grievance was forwarded to ARB by this Grievance Officer with explanation of lateness due to our error." (Doc. 89-4 at 18).  The date stamp on the grievance appears to indicate this explanation was received by the ARB.  Id.

exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness."). In fact, Plaintiff testified that despite the alleged acts of retaliation, he would not be deterred from exercising his rights. Pl.'s Dep. 37:8-12 ("As long as the officers violate my constitutional rights, I'm going to file lawsuits…I will be filing lawsuits on the way out the front door, and I will be pursuing them after I get out."). Therefore, the Court finds that no reasonable juror could conclude that the Defendants violated Plaintiff's First Amendment rights.

Finally, Defendants did not present any undisputed material facts as it relates to the claims of retaliation against Defendant Erickson. Therefore, summary judgment on this claim is not appropriate at this time. This case will proceed against Defendant Erickson on Plaintiff's claims of excessive force and retaliation.

**IT IS THEREFORE ORDERED:**

1) **Defendants' Partial Motion for Summary Judgment [88] is GRANTED in part and DENIED in part. The motion is granted with respect to Plaintiff's retaliation claims against Defendants Funk, Gooding, Hodge, Tredway, Storm, and Strubhart, and these defendants are dismissed with prejudice. The motion is denied as it relates to Defendant Erickson. Clerk is directed to terminate Defendants Funk, Gooding, Hodge, Tredway, Storm, and Strubhart.**

2) **A final pretrial conference is scheduled for         May 19, 2017 at 10:00 a.m.    .  The Plaintiff shall appear by video conference and the attorney(s) shall appear in person before the court sitting in Springfield, Illinois. The clerk is to issue a writ for the Plaintiff's participation in the video conference.**

3) **The Court will send out proposed jury instructions and intends to ask the standard voir dire questions published on the Court's website (http://www.ilcd.uscourts.gov/court-info/local-rules-and-orders/judge_orders_rules). By          May 12, 2017         , the parties shall file:  1) an agreed proposed pretrial order; 2) alternate or additional jury instructions (no duplicates); 3) motions in limine; and, (4) additional voir dire questions (not duplicative of the Court's).  All proposed instructions shall be clearly marked, identifying the party, the number, and whether the instruction is additional or alternate (i.e., Pl.'s 1, additional; Pl.'s 2, alternate to Court's 3).**

4) **The Plaintiff and Defendants shall appear in person at trial.  Inmates incarcerated within the Illinois Department of Corrections (IDOC) who are not parties to this case shall appear by video conference and IDOC employees who are not parties may also appear by video conference at trial.  Other nonparty witnesses may appear by video at the court's discretion.  Therefore, the proposed pretrial order must include: (1) the name, inmate number and place of incarceration for each inmate to be called as a witness; (2) the name and place of employment for each IDOC employee to be called as a witness; and, (3) the names and addresses of any witnesses who are not residents or employees for whom a party seeks a trial subpoena.  The party seeking the subpoena must provide the necessary witness and mileage fees pursuant to Federal Rule of Civil Procedure 45.**

**5) A jury trial is scheduled for   June 13, 2017   at 9:00 a.m. at the U.S. Courthouse in Springfield, Illinois.  No writs to issue at this time.**

ENTERED:     February 22, 2017.

FOR THE COURT:

*s/Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE
