IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| GLENN VERSER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 14-cv-3060 |
| v. ) | Honorable Jonathan E. Hawley |
| ) | **ARGUMENT REQUESTED** |
| ) | |
| RYAN ERICKSON, ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S MOTION FOR SANCTIONS

Pursuant to Federal Rule of Civil Procedure 37 and the Court's inherent sanctions power, Plaintiff Glenn Verser, by and through his undersigned attorneys, moves the Court for sanctions. In support of his motion Plaintiff states as follows:

## FACTS

1.  In 2014, while he was still incarcerated, Plaintiff filed a *pro se* complaint against several corrections officers, including Defendant Ryan Erickson ("Defendant"), for retaliating against him because he had filed lawsuits while he was in prison.

2.  Plaintiff's allegations against Erickson were simple, and were set out in six short paragraphs. Plaintiff alleged that on May 24, 2013, Erickson came to Plaintiff's cell and told him to relinquish a grievance regarding a television. When Plaintiff refused, Erickson cuffed Plaintiff behind his back despite Plaintiff's medical permit prohibiting such cuffing, took Plaintiff to segregation and, on the way to the segregation cell, kneed Plaintiff in the stomach, indicating that he did so because Plaintiff filed lawsuits. (*See* Complaint, ECF No. 1, ¶¶ 9-13.)

3.  After Plaintiff filed his complaint, the case went into a short discovery period. Plaintiff—proceeding *pro se* and *in forma pauperis*, and still behind bars—did his best to take discovery from the defendants, by serving them with interrogatories and document requests.

4.  Plaintiff served six interrogatories that were answered by Erickson; as with Plaintiff's allegations against Erickson, these interrogatories were limited, simple, and straightforward. The interrogatories are attached hereto as Exhibit 1. Plaintiff's interrogatories to Erickson are Nos. 24 through 29. On October 29, 2014, Erickson responded to Plaintiff's interrogatories by claiming, repeatedly, that he had "no present recollection of the alleged event" (*i.e.*, Plaintiff's allegations about Erickson's conduct on May 24, 2013), and that Erickson was responding based only on his review of Plaintiff's discipline records from that date. Specifically:

    a.  Interrogatory 24 asked, "On May 24, 2013, did you have Verser placed in segregation?" Erickson responded that he had "no present recollection of the alleged event."

    b.  Interrogatory 26 asked, "On May 24, 2013, did Verser inform you that he had a medical permit that prohibited single-cuffing in the rear?" Erickson responded that he "has no present recollection of the alleged event."

    c.  Interrogatory 27 asked how Erickson responded to Plaintiff's claim of a medical condition. Erickson again responded that he "has no present recollection of the alleged event".

5.  Erickson never revised or updated these responses. Having learned from Erickson that he had essentially no recollection of the alleged event, Plaintiff took no follow-up discovery directed at probing Erickson's version of what had happened—since Erickson professed to have

no "version" of the alleged event. Plaintiff's *pro bono* counsel was appointed after the close of discovery.

  6. At trial, Erickson's version of what he recalled from that night changed significantly. While in October 2014 Erickson had stated in his interrogatory responses that he had no recollection of the event, at the trial three years later in November 2017, Erickson testified[1] that he *specifically remembered* that:

  a. On the night of May 24, 2013 Erickson was called to Plaintiff's cell block by other officers because Plaintiff was yelling and being disruptive.

  b. Plaintiff was outside of his cell, and was yelling and being disruptive about a grievance he had regarding television.

  c. Erickson ordered Plaintiff to go back into his cell and that Plaintiff refused; and based on that refusal Erickson determined that Plaintiff should be taken to segregation.

  d. When it came time to cuff Plaintiff and take him to segregation for this refusal, Plaintiff claimed to have a medical permit preventing such cuffing, but could not produce it.

  e. After transporting Plaintiff to segregation, Erickson took the initiative to investigate Plaintiff's claims about the television, concluded that Plaintiff's claims

---

[1] Plaintiff's counsel has not ordered a transcript of the trial. Plaintiff's counsel is appointed, and has already exhausted the Court's $1,000 funding for this case, and a trial transcript would cost over $1,200. Plaintiff respectfully submits that because the Court presided over the trial and is familiar with Erickson's testimony, the summary of his testimony offered here is sufficient. That is particularly so because this Motion does not concern a subtle or discrete aspect of Erickson's testimony, but rather the fact that Erickson claimed during discovery to have no recollection of the event at issue in this case, yet provided a detailed narrative of that same event at trial—a fact that Plaintiff does not anticipate will be in dispute. If the Court determines that a transcript is necessary, Plaintiff's counsel respectfully requests that the Court permit additional funding for the transcript and allow Plaintiff to re-file this motion with transcript citations.

were legitimate, and sent an email to the prison's hearing board asking that the "refusing housing" charge against him be dismissed, and that Plaintiff be allowed out of segregation early.

7. Erickson's attorneys elicited this testimony about the event on the stand. After Erickson provided this testimony, Plaintiff's counsel attempted to impeach him before the jury by showing him his earlier interrogatory answers. Erickson responded, though, that his recollection had improved as he worked with his lawyers to prepare for the trial, and that, since he wasn't a lawyer himself, he didn't know about his obligation to update his interrogatory responses. Erickson was the chief witness in his defense case, and after hearing his testimony the jury—which was made up entirely of laypeople who presumably had no familiarity with Erickson's obligations under the Federal Rules of Civil Procedure—returned a defense verdict.

## ARGUMENT

8. "The primary purpose of the discovery rules in the Federal Rules of Civil Procedure is to avoid litigation by surprise." *Shott v. Rush Univ. Med. Ctr.*, No. 11-cv-50253, 2015 WL 138098, at *5 (N.D. Ill. Jan. 7, 2015). *Accord Tyson v. Trigg*, 50 F.3d 436, 445 (7th Cir. 1995) (noting that the "central aim" of "rules regulating discovery" is to "minimize surprise at trial"). Interrogatories are one of the core discovery tools provided by the Rules to achieve this goal. They allow parties to ask their opponents written questions designed to clarify matters of fact and help determine in advance the facts that will be presented at trial in the case. Often, for parties with limited resources who cannot afford the cost of deposition, interrogatories may be the only tool realistically available to gather such information and to avoid surprise a trial.

9. Before 1993, parties sometimes frustrated the purpose of discovery by claiming not to recall the answer to an interrogatory *at the time* the interrogatory was answered, and then

4

"improve" their memory on the same subject later, in time for trial. The 1993 amendments to Rule 26, which included the adoption of Rule 26(e), were designed to put an end to this practice. Rule 26(e)(1) clarified that if a party answers an interrogatory during discovery but later learns that that answer is incomplete incorrect, the party must update the answer. Fed. R. Civ. P. 26(e)(1). As the Rules Committee explained, Rule 26(e)'s "obligation to supplement disclosures and discovery responses applies whenever a party learns that its prior disclosures or responses are in some material respect incomplete or incorrect." Fed. R. Civ. P. 26 advisory committee's note (1993 Amendment, Subdivision (e)).

      10.     Erickson plainly violated Rule 26(e)'s supplementation requirement. As an initial matter, in light of the detailed narrative of the event that Erickson was able to provide at trial, it strains credulity to believe that Erickson had no memory of the event when he answered Plaintiff's interrogatories three years earlier, in 2014. This suggests that at the outset, he violated his obligation under Rules 26(b) and 33 to respond to the interrogatories in the first place. *See, e.g.*, *Life Music, Inc. v. Broad. Music, Inc.*, 41 F.R.D. 16, 24 (S.D.N.Y. 1966) ("An 'I don't remember' answer is, in effect, a representation that the party has no present recollection and is therefore unable to testify. If that representation is false (that is, the party does in fact have a present recollection), an 'I don't remember' answer is nothing more than a refusal to answer."). Erickson indicated as much at trial, stating that it was his "standard" practice to say that he did not recall.

      11.     Whether or not Erickson made a false representation of his memory when he responded to the interrogatories in 2014, however, Rule 26(e) was in place to preclude any possibility that he could benefit from his in-and-out memory, by requiring him to update his responses once his memory improved. This Erickson signally failed to do. At no point did he

inform Plaintiff that instead of "no present recollection of the alleged event," he now had a detailed recollection of the event, his subsequent investigation, and his email to the disciplinary committee that they dismiss the "refused housing" charge against Plaintiff. Indisputably, Erickson had learned before the beginning of trial that his prior interrogatory responses were incorrect. Rule 26(e) imposes a particular duty to supplement inaccurate discovery responses "with special promptness as the trial date approaches," Fed. R. Civ. P. 26 advisory committee's note (1993 Amendment, Subdivision (e)), and Erickson flatly ignored that duty. The violation of Rule 26(e) supplementation requirement is clear.

## SANCTIONS

12. A party that violates Rule 26(e) is subject to sanctions under Federal Rule of Civil Procedure 37(c). The available sanctions range from exclusion of evidence, to awarding attorney's fees, to rendering a default judgment against the disobedient party, to any "other appropriate sanctions." *See* Fed. R. Civ. P. 37(c)(1) & (b)(2)(A)(vi).

13. The District Court has considerable discretion regarding what sanction to impose, and the appropriate sanction is determined by examining the prejudice to the opposing party on the one hand, *see David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (discussing consideration of "prejudice or surprise to the party against whom the evidence is offered" and "the ability of the party to cure the prejudice"), and the and the culpability of the party who violated his discovery obligations on the other. *See Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016) (sanctions appropriate where discovery violation resulted from "willfulness, bad faith, or any fault" of the disobedient party). Here, these considerations are satisfied.

14. ***Prejudice***. Erickson's discovery violation was extremely prejudicial, and by springing his new evidence on Plaintiff during trial, he left Plaintiff essentially powerless to cure

the prejudice. By telling Plaintiff that he had no recollection of the events of May 24, 2013, Erickson effectively short-circuited Plaintiff from further testing any "version" of the event that Erickson might have had. Rather, Plaintiff was led to believe that Erickson did not remember the event at all. Had Erickson amended his responses in light of his improved memory, Plaintiff could have taken additional discovery to understand Erickson's version of what had happened—including why Erickson came to Plaintiff's cell, why Erickson placed Plaintiff in segregation, and what happened after. Given Erickson's representation that he had no memory of the event, however, any such line of questioning appeared futile.

15. Without knowing that Erickson had a memory of the evening, Plaintiff never had an opportunity to test that version with additional discovery. That discovery could have tested Erickson's explanation for why he was called to Plaintiff's cell and how exactly Plaintiff "refused" housing. If Plaintiff had had the opportunity to take this discovery, Erickson's story likely would have fallen apart, particularly because Plaintiff would have known to push for additional discovery (such as more interrogatories and operational records from May 24, 2013) that would test Erickson's claim that he was called down because Plaintiff was yelling, outside of his cell, after lockdown.

16. Furthermore, if Plaintiff had known that Erickson had a memory of the event, Plaintiff could have propounded additional discovery asking Erickson what he knew about the disciplinary process and the dismissal of Erickson's "ticket" against Plaintiff. Because Erickson did not disclose his memory of the event, however, he was able to tell a story, unchallenged, that he conducted a *sua sponte* investigation of Plaintiff's television grievance, and sent a merciful email to the disciplinary board. That testimony was exceptionally damaging to Plaintiff's case,

7

because instead of casting doubt on the validity of Erickson's disciplinary ticket, it allowed Erickson appear to be fair and merciful—and to implicitly paint Plaintiff as a liar.

17.     Plaintiff counsel's best tool to counteract Erickson's surprise testimony was to attempt to impeach him with his interrogatory responses. But that effort was hobbled by the rules themselves: Erickson testified that his memory had improved as he was preparing for trial; and since he had not complied with Rule 26(e)'s obligation to supplement, the "impeachment" became not Erickson's answer from 2014, but whether he was aware of his obligations to supplement his responses under the Rule 26(e). Erickson had a ready answer for that: he was not a lawyer and didn't know about any such obligation. The lay jury was thus effectively asked to decide what obligations Erickson had under the Federal Rules of Civil Procedure, and whether he should be charged with knowing them.

18.     Furthermore, as noted above, Erickson's non-disclosure meant that Plaintiff's best tool available was an ersatz version of inconsistent-statement impeachment. By failing to supplement his responses before trial, Erickson deprived Plaintiff the ability to *gather evidence* showing that Erickson's version of events was false—*e.g.*, that the reasons Erickson claimed to have come to Plaintiff's cell at the behest of other officers were incorrect, that Plaintiff could not have been outside his cell at that time, that there was no record of Plaintiff yelling or Erickson being called to quell disruptive behavior, and that Erickson never sent an email to the prison's disciplinary board.

19.     *Fault*. Sanctions should be imposed where a discovery violation results from "willfulness, bad faith, or any fault." *Ramirez*, 845 F.3d at 776. The Court need not determine whether Erickson or his attorneys acted willfully or in bad faith (though as noted above Erickson's interrogatory responses appear to have been part of his "standard" practice to flout his

discovery obligations when he is sued—*see* ¶ 17 supra), because the discovery violations here easily satisfy the "fault" criteria as articulated by the Seventh Circuit.

20. As the Court of Appeals explained in *Ramirez*, "[f]ault, in contrast to willfulness or bad faith, does not require a showing of intent, but presumes that the sanctioned party was guilty of 'extraordinarily poor judgment' or 'gross negligence' rather than mere 'mistake or carelessness.'" *Id.* (quoting *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992)). Rather, "'[f]ault in this context suggests objectively unreasonable behavior'". *Id.* quoting *Long v. Steepro*, 213 F.3d 983, 987 (7th Cir. 2000)).

21. Here there can be no doubt that the Seventh Circuit's fault standard is satisfied. This was not a complicated case where the party or his attorneys might be excused for missing a stray fact or discrete discovery response. The Complaint's allegations against Erickson were exceptionally simple, consisting of a total of six short paragraphs that took up less than a page. The discovery was similarly short and simple comprising six straightforward interrogatories to which Erickson gave one- or two-sentence answers. And the interrogatories—as well as Erickson's answers that he had no memory of the event—went to the core evidence in the case, *i.e.*, whether Erickson had any testimony to offer about the event that Plaintiff alleged.

22. At all times in this case Erickson was represented by counsel from the Illinois Attorney General's office; either he, or they, failed in their duty to supplement Erickson's interrogatory responses before trial. In a case with facts this simple, involving only six interrogatory responses, by the defendant's chief witness, which go to the core of the testimony of that witness—it is objectively unreasonable for a party and his attorneys not to review those responses before trial and supplement them supplementation is so required. To hold otherwise would allow parties to ignore Rule 26(e) at will.

23.     Sanctions are thus appropriate against Erickson or his attorneys, under both Rule 37 and the Court's inherent sanction power. *See, e.g.*, *Colyer v. City of Chicago, Gildardo Sierra*, No. 12-cv-04855, 2016 WL 25710, at *14 (N.D. Ill. Jan. 4, 2016) (Kennelley, J.) (observing that defendants' attorney "violated the duty to supplement or correct a discovery response under [Rule] 26(e)," and was therefore subject to sanctions under both Rule 37 and the District Court's inherent sanctions power); *id.* ("Under Rules 26(e) and 37(c), federal courts may level 'appropriate sanctions' against a party that fails to timely supplement or correct its discovery responses."). Plaintiff does not take a position on whether the sanctions should fall on Erickson, his attorneys, or both—Plaintiff's concern is receiving relief from the serious discovery misconduct that occurred here.

24.     Plaintiff respectfully submits that the first appropriate sanction is to order a new trial. Erickson's testimony about the event was the only evidence offered by the defense to contradict the testimony of Plaintiff, Mr. Crump, and Mr. Zeigler; thus the inclusion of this testimony cannot be considered a marginal matter that would not affect the outcome of the trial.

25.     In addition to a new trial, Plaintiff believes it is appropriate to require payment of attorneys' fees for the prosecution of this sanctions motion, and either for counsel's prosecution of the previous trial, or the next one. *See, e.g.*, *Colyer,* 2016 WL 25710, at *14 (granting motion for a new trial as well as costs and attorneys' fees spent in preparation for first trial, where evidence was revealed mid-trial which had not been disclosed or provided in discovery, and plaintiffs had been led to believe the evidence did not exist). The Court appointed counsel for Plaintiff. In doing so, the Court tapped into a valuable—and limited—resource, and indeed, Weil & Chardon LLC devoted considerable time to this case that has limited its ability to take on other *pro bono* matters. Those resources were expended based on the assumption that Plaintiff's

10

trial would be fair, but it was effectively wasted by Erickson's discovery misconduct. And if the Court does grant a new trial, Weil & Chardon LLC or some other firm will take on the case, to the detriment of some other deserving indigent client that the firm could have represented instead. As in the *Colyer* case, the discovery misconduct here undoubtedly "thwarted Plaintiff ['s] trial preparation and trial efforts," leaving counsel "scramb[ling] to adjust their trial presentation" in the middle of trial, and rendered the trial fundamentally unfair. *Id.* Erickson, or his attorneys, should not be allowed to frustrate the administration of justice in this manner.

**WHEREFORE**, Plaintiff respectfully requests that the Court issue and order:

a) Vacating the trial verdict in this case;

b) Ordering a new trial in this case;

c) Ordering that Erickson or his attorneys pay the cost of the prosecution of this sanctions motion;

d) Ordering that Erickson or his attorneys pay the cost of (i) the prosecution of the previous, November 2017 trial against Erickson, and/or (ii) the prosecution of a subsequent trial against Erickson; and

e) All other relief that the Court deems just and proper.

Respectfully submitted,

/s/ Alexis G. Chardon

Alexis G. Chardon
Stephen H. Weil
Weil & Chardon LLC
333 S. Wabash, Suite 2700
Chicago, IL 60604
(312) 585-7404
ali@weilchardon.com
steve@weilchardon.com

*Counsel for Plaintiff Glenn Verser*

11

**CERTIFICATE OF SERVICE**

    I certify that on December 13, 2017, the foregoing motion was filed through the District Court's CM/ECF automated docketing system thereby causing service upon all counsel of record.

/s/ Alexis G. Chardon

*Counsel for the Plaintiff*